**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Richard Wallace, | ) | No. CV 07-2559-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| The Bashas' Inc. Group Disability Plan, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant The Bashas' Inc. Group Disability Plan's Motion for Summary Judgment (Doc. # 16). For the reasons that follow, the Court grants Defendant's motion.

**I. BACKGROUND**

The following facts are not in dispute. In 1987, Plaintiff Richard Wallace began his employment with Bashas' Inc. In July 2000, Wallace began experiencing pain in his left groin and testicular area resulting from physical work unrelated to his employment with Bashas'. Wallace sought treatment for his pain from his treating physician, Judy M. Pinsonneault, D.O. Dr. Pinsonneault referred Wallace to a urologist; however, the urology evaluation was unable to identify the source of Wallace's groin pain. Wallace then began taking medication for pain relief.

Eventually, Wallace began experiencing groin, testicular, and lower back pain, as well as numbness in his hands and other issues with his legs. Dr. Pinsonneault referred Wallace to a pain management specialist, who administered caudal and lumbar epidural injections to Wallace, but to no avail.

1   In December 2004, Dr. Pinsonneault recommended Wallace reduce his working hours as a result of his inability to work with pain. Accordingly, Wallace applied for disability benefits with Defendant. The Plan Document and Summary Plan Description ("Plan") defines "disability/disabled" as follows:

> "Disability/Disabled" is determined by the Plan Administrator or its designee in its sole and absolute discretion and means the inability of a participant to perform the Material and Substantial Duties of his or her job with Bashas' as a result of a nonoccupational illness or injury including pregnancy. After the first 24-month period of Disability, the definition of Disabled means the inability of a participant to perform the Material and Substantial Duties of any occupation as a result of a nonoccupational illness or injury.

(Doc. # 21-2, tab 4, p. 1.)

Defendant granted Wallace's disability claim with respect to the initial 24-month period, and Wallace began receiving disability benefit payments. As the initial 24-month period was nearing completion, Defendant requested Wallace to submit to an independent medical exam ("IME") for the purpose of determining whether he satisfied the definition of disability, after the initial 24-month period, within the meaning of the Plan.

After the results of the IME were obtained, Defendant concluded that Wallace was not unable "to perform the Material and Substantial Duties of any occupation," and, as such, Wallace was not disabled under the Plan. In a January 2007 letter, Defendant notified Wallace of its determination and informed him that his benefits would be terminated in February 2007.

In June 2007, Wallace, through counsel, submitted a letter to Defendant requesting review of Defendant's determination that Wallace was not disabled. Wallace provided the plan with additional medical records and a functional capacity evaluation ("FCE") performed in April 2007. As a part of its review, Defendant also requested Wallace to undergo an additional IME. However, Wallace objected to the additional IME and refused to appear for the examination. With Wallace refusing to attend the IME, Defendant sent Wallace's medical records to John L. Beghin, M.D., for his review and opinion concerning Wallace's alleged disability. Dr. Beghin's opinion was consistent with the finding of the previous IME.

After reviewing the IME, Dr. Beghin's opinion, and the documents submitted by Wallace, Defendant again determined that Wallace was not disabled within the meaning of the Plan. In an October 2007 letter, Defendant informed Wallace of its determination. In December 2007, Wallace filed this present action alleging that he is entitled to long-term disability payments under the Plan.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment is mandated, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, when the decision to grant or deny ERISA benefits is reviewed for abuse of discretion, as is the case here, a motion for summary judgment is merely the conduit to bring the legal question before the Court and the standards of summary judgment, such as whether a genuine dispute of material fact exists, do not apply. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir. 1999) (overruled on other grounds by *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 965 (9th Cir. 2006) (en banc)).

"The Supreme Court has held that a denial of benefits 'is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).

The Plan provides for the following review of disability claims:

> The Plan Administrator shall administer the Plan, shall construe the Plan, and shall determine all factual and nonfactual questions of interpretation or policy in a manner not inconsistent with the Plan. The Plan Administrator's

> construction or determination shall be final and conclusive on all parties. The Plan administrator may delegate to any other person or organizations any of its powers or duties with respect to the operation of the Plan.
>
> . . . .
>
> The Plan Administrator shall have all powers necessary or appropriate to accomplish the Plan Administrator's duties under the Plan.
>
> In addition to the duties of the Plan Administrator specified elsewhere in this document, the Plan Administrator's duties shall include, but not be limited to, the following:
>
> 1. Determining all factual and nonfactual questions relating to the eligibility of an individual to be a Plan participant, to (a) be and remain a participant in the Plan, and (b) to receive Plan benefits.

(Doc. # 21-2, tab 4, p. 9.) The parties do not dispute that this language confers discretion. Nevertheless, Wallace contends that a structural conflict of interest exists because Bashas' Inc. is both "the funding source and the payer of claims." (Doc. # 29 at p. 9.)

**1.  Conflict of Interest**

Where, as here, the Plan grants discretionary authority to the plan administrator, this Court reviews the administrator's decision for an abuse of discretion. *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 866 (9th Cir. 2008). The way this Court applies the abuse of discretion standard, however, depends upon whether the administrator has a conflict of interest. Where there is no such conflict, review of a plan administrator's determination involves a straightforward application of the abuse of discretion standard. However, as is the case here, where a plan administrator operates under a conflict of interest, the Court must weigh the conflict "as a 'factor in determining whether there is an abuse of discretion.'" *Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008) (quoting *Firestone,* 489 U.S. at 115). As the Court stated in *Abatie,* consideration of the conflict can "affect judicial review," and this Court is required to consider the conflict and to temper the abuse of discretion standard with skepticism "commensurate" with the conflict. 458 F.3d at 965.

In the present case, the Court finds that a structural conflict does exist as a result of Bashas' Inc. serving as both the funding source and administrator of the Plan. However, the Court finds that the conflict should be afforded little weight. Wallace has failed to produce

- 4 -

any evidence demonstrating that the conflict affected the plan administrator's decision, nor has Wallace produced any evidence that Defendant has a history of biased claim administration. Likewise, Wallace has not presented the Court with any evidence of malice or self-dealing on the part of Defendant, nor has Wallace suggested that Defendant failed to adequately investigate Wallace's claim or ask him for necessary evidence.[1] Although Wallace argues that Defendant failed to credit his evidence, this issue goes to the weight of Wallace's evidence. Lastly, the administrator provided consistent reasons for denying Wallace's claim. Pursuant to the evidence submitted by the parties and the guidance provided by the Ninth Circuit Court of Appeals in *Abatie* and its progeny, the Court finds little reason to view the conflict with suspicion.

Accordingly, the Court finds that the conflict should be afforded little weight in its abuse of discretion review.

**2.   Procedural Irregularities**

Wallace argues that Defendant's initial denial letter violated 29 C.F.R. § 2560.503-1 and, consequently, Defendant's "failure to comply with ERISA's notice requirements should weigh heavily in this Court's determination of whether the Plan abused its discretion." (Doc. # 29 at p. 16.) A procedural irregularity does not usually alter the standard of review from abuse of discretion to de novo review. *Abatie,* 458 F.3d at 972. "A small procedural irregularity is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion, just as a court would weigh a conflict of interest." *Horton v. Phoenix*

---

[1] Wallace does argue that Defendant "was waging a deliberate campaign against him." (Doc. # 29 at p. 17.) In support of his argument, Wallace cites the fact that Defendant prematurely discontinued Wallace's initial 24-month period of benefits, as well as various problems Wallace encountered while attempting to become an eligible dependent on his wife's health insurance plan–who was also a Bashas' employee. With respect to the premature termination of benefits, as Wallace admits, Defendants recognized its error and reinstated Wallace's benefits without Wallace experiencing any loss or reduction of benefits due to the error. With respect to the health insurance issues, Wallace fails to demonstrate any connection, nor does the Court see any such connection, between Defendant's decision to deny long-term disability benefits and the issues he experienced in attempting to secure health insurance as a dependent of his wife.

*Fuels, Co., Inc.*, 611 F.Supp.2d 977, 986 (D. Ariz. 2009). "Procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti v. Reliance Standard Life Ins. Co.,* 415 F.3d 978, 985 (9th Cir. 2005).

Specifically, Wallace argues that Defendant committed three violations of ERISA's notice requirements: 1) the denial letter does not provide specific reasons for denial; 2) the denial letter does not make specific reference to the plan provisions at issue; and 3) the denial is devoid of any information about what Wallace can provide to perfect his claim. None of these specified reasons, however, justify an implementation of a de novo review in lieu of an abuse of discretion review, nor does Wallace so suggest.

Nevertheless, "what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). If benefits are denied, the reason for the denial must be stated with specific reference to the plan provisions that form the basis of the denial. *Id.* Defendants included the following rationale in its denial letter:

> The Independent Medical Examination report has been received and reviewed. The report reflects a complete and thorough evaluation of all medical records, diagnostic testing and physical examination.
>
> This disability claim was originally for chronic back/leg pain. In Dr. Rowley's examination, increasing your functional status for progressive desensitization, both physical and psychological would be of most benefit. Permanent restrictions of 20# lifting and 30# pushing/pulling. Alternate positions frequently and no repetitive bending/twisting/stooping at waist. This would prevent you to returning to your <u>Management</u> position with Bashas.
>
> However, per the Plan Document, after (2) years, you must be "unable to perform <u>ANY OCCUPATION</u>" in order to continue receiving disability benefits. Dr. Rowley has indicated your ability to work in a "sedentary position" with the above restrictions. Our determination for benefits is based on the physician's findings, therefore, your benefit would end effective 1/30/06, however, your final pay is 2/28/06.

(Doc. # 26-4, Ex. 15.) The Court finds that Defendants did include the reason for denial; namely, that in order to be disabled under the Plan, Wallace must be unable to perform any occupation, and the administrator found otherwise. "The requirement under ERISA that the

plan administrator give 'specific reasons' for the denial 'is not the same thing as the reasoning behind the reasons.'" *Safavi v. SBC Disability Income Plan,* 493 F.Supp.2d 1107, 1118 (C.D. Cal. 2007) (quoting *Gallo v. Amoco Corp.,* 102 F.3d 918 (7th Cir. 1996)). Nevertheless, the Court finds that Defendants did not include a specific citation to the Plan provisions, nor did Defendants inform Wallace what he needed to do in order to perfect his claim.

Despite these procedural violations, the Court concludes that Defendant's failures did not significantly affect the proceedings in this case. Wallace was provided with enough information to know the reason why Defendant found him not to be disabled under the Plan. Although Defendant did not include a specific citation to the applicable provision in the Plan that formed the basis of Defendant's denial, Defendant did quote the applicable provision in its denial letter. This was sufficient to enable Wallace to formulate his further challenge to the denial, the challenge that he mounted both in his appeal and in this suit. Moreover, the series of letters between Wallace, his attorney, and Defendant indicate the type of "meaningful dialogue" that ERISA and the supporting regulations favor. *Booton*, 110 F.3d at 1463.

The procedural irregularities here were not "so flagrant" as to alter the standard of review from abuse of discretion to de novo. *Gatti,* 415 F.3d at 985. Additionally, while procedural irregularities are a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion, the irregularities in the present case will be given little weight.

Therefore, for the reasons discussed above, the Court will give little weight to the structural conflict of interest and procedural irregularities in its abuse of discretion review.

**B.      Review of the Administrator's Findings**

Under the abuse of discretion standard, the Court must consider whether the administrator "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan,* 410 F.3d 1173, 1178

(9th Cir. 2005). With respect to the first inquiry, both in the initial denial letter and in the denial letter on appeal, Defendant set forth the reason for the denial and the basis for doing so. Defendant clearly states in each letter that the basis for the denial of benefits is that Wallace is not unable to work in any occupation because of a disability. In each letter, Defendant also cites the physicians it is relying upon in rendering its decision, including the pertinent portion of their opinions. While the denial letters are not extensive in nature, Defendant nevertheless included an explanation for its decision within the meaning of *Boyd*.

With respect to the second inquiry, Wallace does not suggest nor does the Court find that the administrator construed the Plan in a way that conflicts with the plain language of the Plan. The administrator's decision to deny Wallace's benefits claim was premised upon the Plan's definition of disability. Defendant did not depart from this definition in determining whether Wallace was disabled and, in fact, applied this definition in both denial letters. Defendants decision does not contradict the plain language of the Plan.

Finally, the Court finds that the administrator did not rely upon a clearly erroneous basis for denying Wallace's claim. Wallace's alleged disability stems from pain associated with his groin, testicular, and lower back areas, as well as numbness in his hands and various issues with his legs. Wallace asserts that at least one or more doctors diagnosed him with lumbosacral radiculopathy with polyneuropathy, stenosis, disk protrusion, facetogenic pain, and facet arthropathy, all of which are consistent with his chief complaints of pain. The question with respect to whether Wallace qualifies for long term disability benefits, however, is not whether certain physicians have been able to diagnose Wallace with a particular medical condition. Rather, the pertinent question for the Plan administrator was whether such a condition or conditions preclude Wallace from performing "the Material and Substantial Duties of any occupation." The only evidence Wallace submitted regarding whether he was unable to work in any occupation was that of his treating physician, Dr. Pinsonneault, and a functional capacity evaluation ("FCE") conducted after Defendant's initial denial but before Defendant issued its denial on appeal. Although Wallace was seen by various urologists, pain management specialists, and other medical experts, these visits

1  did not culminate in an opinion concerning whether Wallace was unable to perform the work
2  of any occupation. Indeed, many of these referrals and visits occurred before there was even
3  an issue concerning whether Wallace was disabled within the meaning of the Plan.

4  Moreover, the Plan administrator did not abuse his discretion in rejecting the opinions
5  and conclusions of Dr. Pinsonneault and the FCE. Dr. Pinsonneault states that Wallace "is
6  incapacitated from any type of employment," and he "is unable to sit, stand or walk for
7  greater than 15 minutes without severe pain." (Doc. # 21-2, Tab 6, p. 3.) Dr. Pinsonneault
8  also notes that Wallace is unable to bend or squat and "he is unable to lift greater than 30
9  pounds at one time or 10 pounds continuously." (*Id.*) Finally, Dr. Pinsonneault states that
10 Wallace is suffering from depression that "severely affects his concentration and his ability
11 to deal with any stressors." (*Id.*) While these statements are supportive of a finding that
12 Wallace is disabled within the meaning of the Plan, Defendant is not required to adopt Dr.
13 Pinsonneault's opinion wholesale, especially when the administrator had reliable evidence
14 before him that conflicted with Dr. Pinsonneault's opinion. As the Supreme Court has held,
15 "courts have no warrant to require administrators automatically to accord special weight to
16 the opinions of a claimant's physician; nor may courts impose on plan administrators a
17 discrete burden of explanation when they credit reliable evidence that conflicts with a
18 treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834
19 (2003).

20 As Wallace's initial 24-month disability period was nearing completion, Defendant
21 requested that Wallace submit to an IME for the purpose of determining whether he was
22 disabled after the initial 24-month disability period within the meaning of the Plan. Edward
23 J. Dohring, M.D., conducted the IME. Dr. Dohring reviewed Wallace's medical records and
24 conducted a physical examination of Wallace. Dr. Dohring concluded that Wallace was not
25 unable to perform any occupation:

> Mr. Wallace complains of pain and dysfunction far out of proportion to any possible medical diagnosis he may carry. He indicates that his leg pain is worse than his back pain, but there is nothing on his examination or imaging to suggest a significant neurologic compromise. His MRI's reveal some degenerative change at L5-S1, but not of the sort associated with his level of

complaints and perceived disability. There is no appropriate anatomic or physiologic diagnosis consistent with his complaints, and his complaints appear to be most influenced by psychosocial factors.

. . . .

With regard to work, there was no reason why Mr. Wallace could not be working at least sedentary to light duty, even with reference to any possible/putative medical diagnoses that could be made. There is no objective reason why he could not work his normal job as a customer service representative, without restrictions relative to that job.

(Doc. # 21-3, Tab 15, p. 8.) In response to the specific question of whether "Mr. Wallace [can] return to pre-injury work as a customer service representative?" Dr. Dohring answered in the affirmative, opining that "it is medically safe for Mr. Wallace to return to his pre-injury work as a customer service representative, or at least some other sedentary or light duty position." (*Id.* at p. 9.)

Defendant also sought the independent medical opinion of Dr. Beghin.[2] Dr. Beghin concurred with Dr. Dohring's opinion that Wallace is not unable to perform physical activities such that light sedentary work is unfeasible:

In summary, the claimant developed left groin and testicular pain in early 2000 and subsequently underwent extensive evaluation and treatment without any objective evidence of significant abnormality to explain those symptoms. The constellation of symptoms then increased to include the lower back, the left leg, the neck as well as both hands. Extensive conservative treatment of those complaints failed to be of benefit and numerous diagnostic tests have revealed no significant structural abnormality that would correspond with these complaints. Two independent medical evaluations have documented a history of psychiatric diagnosis and identified pain embellishment on examination.

Based upon this review of medical records, I would concur with the assessment of Edward Dohring M.D., that there is no significant structure abnormality that would contraindicate physical activity. There would be no structural basis to assign any limitations regarding work. The functional limitations that were displayed by the claimant at the time of assessment by the physical therapist are probably an elective limitation of activities by the claimant and cannot be explained on the basis of a structural abnormality. A conclusion that the claimant could not lift more than 10 pounds is not consistent with extensive diagnostic evaluation.

---

[2] Dr. Beghin did not conduct a physical examination of Wallace as Wallace refused to appear for a second IME.

- 10 -

(Doc. # 21-3, Tab 21, p. 3.)

Thus, the administrator had evidence before him that contradicted the opinion of Wallace's treating physician. Wallace has failed to demonstrate why this evidence, the opinions of Drs. Dohring and Beghin, is unreliable, nor does the Court so find. Rather, because these opinions were based upon in-person, physical examinations or reviews of the medical records, the Court finds that the opinions were reliable. As such, Defendant did not abuse its discretion in relying upon these opinions.[3] Although the administrator did not explain why he rejected the opinion of Dr. Pinsonneault, this Court is not permitted to impose the burden on Defendant of explaining why it rejected Dr. Pinsonneault when the administrator had other reliable, contradictory evidence before him. Defendant did not abuse its discretion by adopting the opinions of Drs. Dohring and Beghin over Dr. Pinsonneault.[4]

With respect to the FCE, Defendant did not abuse its discretion in rejecting the conclusions propounded by the FCE. The FCE contained the following conclusion regarding Wallace's ability to work:

> The FCE results demonstrate that the subject is physically capable of performing jobs within the SEDENTARY physical demand level based on the Dictionary of Occupational Title (1991) definition. However, based on the subject's documented and supported pain and its effect on function, the SEDENTARY occupational base would likely be eroded to a degree that the subject would be unable to return to any type of work on a regular and consistent basis.

---

[3] Wallace argues that neither Defendant nor Dr. Beghin considered the effect of Wallace's use of narcotics in determining whether Wallace was disabled. Dr. Dohring, however, specifically discussed Wallace's use of pain medications, and yet still concluded that Wallace was not unable to perform any occupation. Because Defendant relied upon the opinion of Dr. Dohring in denying Wallace's claim for disability, which as discussed above Defendant was permitted to do, the Court rejects Wallace's argument.

[4] Wallace asserts that Defendant reached its decision on appeal in July 2007 but it did not receive Dr. Beghin's report until October 2007. Even assuming the veracity of this assertion, Defendant was permitted to rely upon the opinion of Dohring in concluding that Wallace is not disable, and as discussed above, such a reliance was not an abuse of discretion.

(Doc. # 21-3, Tab 18, Addendum to FCE.) The plain language of the FCE is ambivalent regarding Wallace's ability to work. The FCE first states that Wallace is physically capable of performing sedentary jobs, but then attempts to clarify this statement by stating that the occupational base "would likely be eroded" based upon Wallace's complaints of pain. It is not clear to what degree of certainty the phrase "would likely be eroded" implies with respect to Wallace's inability to perform any occupation. Based upon the irresolute nature of the FCE, and given that Defendant had more definitive statements before it concerning Wallace's ability to perform any occupation, Defendant did not abuse its discretion in rejecting the conclusion of the FCE.

Wallace also argues that Defendant erred by giving no weight to the fact that Wallace was awarded Social Security Disability Insurance ("SSDI"). Wallace was awarded SSDI benefits in April 2006, retroactive to December 2004.[5] Wallace asserts that a SSDI award is a factor to consider in the Court's abuse of discretion analysis. Even weighing the fact that Wallace received an SSDI award and yet the administrator found Wallace not disabled under the Plan, the Court finds no abuse of discretion. Defendant was permitted to rely upon the opinions of Drs. Dohring and Beghin, and not afford any special weight to Dr. Pinsonneault. *Nord*, 538 U.S. at 834. However, the same is not true in the social security context, as the social security disability analysis involves giving special deference to a claimant's treating physician. 20 C.F.R. § 404.1527(d)(2). This standard, as discussed above, is not applicable in the ERISA context.

Finally, Wallace argues that he is entitled to an additional 24-month period of disability benefits based upon his debilitating depression. While the Court does not doubt the reality of Wallace's depression, the Plan does not provide for an additional 24-months

---

[5] Defendant claims that it had no knowledge of Wallace's SSDI award until after Defendant denied Wallace's claim, whereas Wallace animatedly suggests that Defendant had knowledge of the award. The Court need not resolve this discrepancy, as even assuming Defendant had knowledge of the award, it did not abuse its discretion in denying Wallace's claim.

of benefits as a result of a mental disability or illness. Rather, the Plan simply provides for an initial 24-month period of disability benefits–which is available if the claimant is unable to perform the duties of his or her job with Bashas'–and then long-term disability benefits–which is available after the initial 24-month period if the claimant is unable to perform any occupation. The only provisions of the Plan relating to a mental illness do not provide for an additional 24-month period of benefits, but quite the opposite:

> Notwithstanding any other provision of the Plan to the contrary, and in addition to other limitations or exclusions set forth elsewhere in this document, Disability benefits will not be payable to you under the Plan if:
>
> . . . .
>
> You have already received a payment of disability benefits for 24 months with respect to a period of Disability caused or contributed to by what the Plan Administrator determines to be a mental disorder, e.g. a mental, emotional, behavioral, or stress-related disorder

(Doc. # 21-2, Tab 4, pp. 5-6.) Wallace does not point to any provision in the Plan that would support his argument for an additional 24-month period of disability based upon his depression. The Court finds that Wallace's argument is not supported by the Plan and, accordingly, the Court rejects Wallace's argument.

## CONCLUSION

The Court has considered the structural conflict of interest as well as procedural irregularities and has weighed both as factors for consideration in its abuse of discretion analysis. The Court has also reviewed the evidence in the record. For the reasons discussed above, the Court finds that Defendant did not abuse its discretion in denying Wallace's claim for long-term disability benefits under the Plan.

Accordingly,

**IT IS ORDERED** that Defendant The Bashas' Inc. Group Disability Plan's Motion for Summary Judgment (Doc. # 16) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly, with judgment in favor of Defendant and against Plaintiff, with Plaintiff to take nothing.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

DATED this 20th day of January, 2010.

_____
James A. Teilborg
United States District Judge